Thank you, and may it please the Court, I'm Michael Harris on behalf of the appellant Friends of Animals. I'd like to reserve three minutes for rebuttal if I can. Okay, this case initiated with a petition that was submitted by Friends of Animals to the U.S. Fish and Wildlife Service in June of 2017. The petition was seeking protections under the Endangered Species Act for a herd of wild mustangs in Montana that have very unique genetic characteristics. The merits of that petition, however, was never heard by Fish and Wildlife Service. Instead, the petition was summarily denied based upon a rule that it had promulgated just a few months prior in September of 2016. That rule, which for the first time in more than 40 year history of the Endangered Species Act, required that this case, it would have been Montana, 30 days before filing the petition with Fish and Wildlife Service. The purpose of the rule is plain. I don't think it can really be disputed. It's set out in the Federal Register in the preamble to that rule, and that is to provide affected states a window of time to be able to make objections, submit information, provide their opinions and views on the petition before Fish and Wildlife Service even gets it in their hands. We're here today because we believe that this rule is illegal for two individual reasons. The first is under Chevron that this procedure conflicts expressly with the intent of Congress in Section 4, and it really does so in two ways. One way is it dramatically alters the standard of review that the petition would receive within the first 90 days of its submission to Fish and Wildlife Service. And the second way is that Congress provided very clear guidance and, it's not even guidance, very clear authority for what role the states would play in the process under Section 4. And again, this rule dramatically alters and conflicts with that. If you're finishing your introduction, I'll ask my question later. Well, as an alternative, I'll just quickly say we believe that the are hookier. But in the alternative, if as council has argued, all of those concerns about Section 4 aren't implicated because this is all before the petition process starts, then there's just no legal authority for them to issue such a rule. The legal authority here is found in Section 4H, and it provides the ability for the agency to promulgate guidelines to regulate the Section 4 process. So if it's not part of the Section 4 process, then there's no legal authority for it whatsoever. My question was this, and I'm hopeful that you'll correct me if I'm wrong in thinking this. I guess I was of the view that in order for you to prevail here, we would have to be convinced that it would be impermissible for the services to take into account information received from the states in making that 90-day determination. In other words, that whether it arrived before you filed or on the five days after you filed, that the services can't take that information into account. They really have to confine themselves to the four corners of the petition as well as, I don't know, I guess like just general background scientific knowledge. But any input from the states should just be excluded from the 90-day determination altogether. If we agreed with you on that, I could see us ruling in your favor. But if we didn't agree with that, then I'm not sure I see how your argument succeeds. Okay, well let me start by saying the I think this is more of a Chevron step one case than a step two case. I think first the district court below put the hook on step two because it looked at this rule very narrowly. It interpreted as a just a notice requirement and concluded that the Section 4 seemed to be, you know, quiet on prohibiting that notice. I actually don't think that's true and I can get into that. But we think this is really a Section 1 case because the purpose of the rule is clear, as I said. It is to obtain information, to allow the states to submit information. We think that the real scope of this world, the rule is a solicitation rule. So that gets into the question of is that allowable or not? And I think the Morgan Wick line of cases make it clear. I don't think opposing counsel here would even argue that if this was the agency making the request for submission of information, that that, you know, we've had six cases cited in our briefs starting with Morgan Wick. All have said, not that that's impermissible, that it's flatly inconsistent with the standard of review in Section 4. So I think that that first question, I think, is answered and the be allowed to compel us to do something that they can't do. And I don't see that that would make any sense whatsoever. I think as the magistrate judge said in his recommendations, he didn't see a distinction between what was happening in the Morgan Wick line of cases and what the agency is trying to attempt to achieve here. I think going a step further, though, it's really important to it's not just the standard of review that Congress dealt with in Section 4. It also understood the role of the states and foresaw that states may not necessarily be eager to have species within their jurisdiction listed. So I point the court to four provisions within Section 4. The first is that are within 1533, 16 U.S.C. 1533, B2, B1A, B5A, and 1533I. Now the first one really deals with what Morgan Wick was dealing with and that's 1533B2. Because A and B of that section set up this two-step process. And as you said, Judge, the first step, it's the four corners of the petition. Would a reasonable person looking at that petition, believing it to be contained truthful information, you know, come to this conclusion that the petitioned action may be warranted. So of course Fish and Wildlife Service's experts in this area, they're going to have some knowledge, potentially have some knowledge already in existence and they should be able to look at that petition through that lens. But it is the petition. But once you move past that, if it's a positive finding and you move into the status review, you have 1533B1A. And this is the first mention of the state's role in the process. The state here isn't even asked to do anything. Fish and Wildlife Service is directed by Congress during the status review to take into account existing state conservation measures. So to start to sort out what may be happening at the state level. Well, can I ask, counsel, can it sort of elevates the position of states, you know, gives them a kind of a special role in the process. Are you saying, though, that that relates only to the 12-month determination and not to the 90-day determination? Yeah, if you look at the language of B1A, it says during the commencement, well, I say status review, but I think it's review of the status of species. That language mirrors what happens in stage two. So if you go to 1533B2B, it says if you find, you know, the 90-day findings positive, you commence a review of the status of the species. So even though they're out of order, B1A takes place after the initial 90-day is found. And it's not even really, I agree, states have a special role. I'm not denying that. But even at that point, they're not even being solicited. Fish and Wildlife Service is just being told to review state conservation measures that bear on the species. But when you get to 1533B5A, and this is where I think, you know, the focus should be, now we're past the status review. Now Fish and Wildlife Service is literally going to propose a listing rule. And Congress says two things. 90 days before you do that, provide public notice in the Federal Register, and here is the kicker, and provide actual notice to the states, and allow them to specifically affected states, those that have these animals within their borders, and allow them to comment and object. Because if you look at 1533I, if the service proceeds with the rule, in light of objections, they have to provide written justification. The way I read this is Congress understood that the states may have serious objections beyond what the biological reasons for listing a species would be, and therefore deferred their participation until, obviously, when they were literally proposing to take action. And then to provide them a very unique role of saying, what are your objections? How can we deal with them? How can we proceed? Because we believe this species deserves listing. So if you sat down and took 1533B5A, and you put it next to this rule that was used to object or reject our petition before it was even heard, you'd say, it's the same thing. They moved up this notice and solicitation from after reviewing the petition and finding it to be meritorious, to before it's even submitted to the agency. And, you know, I just don't see how it could be any more clear what Congress's intent was, not just with what happens at the 90-day stage in the four corners of the petition, but the states and how to handle their potential objection to these listings. Can I? No, go ahead, Chuck. Please proceed. I was just going to ask, can this simply be construed as a courtesy notice to the later on in the process when they receive actual notice? And if so, could this simply be part of the guidelines for petitions that the services are authorized to provide? Well, the district court called it a courtesy petition, but she only could do so by actually divorcing it from the intent. I mean, this isn't a notice that's required at the time we give them the petition. There's a preamble to the rule. It's, again, it's not a notice requirement. It's an attempt to solicit or an attempt to invite, however you want to put it, the submission of information prior to the petition arriving at the desk of the Fish and Wildlife Service. And it even goes further than that in the preamble, and we'll use that information. But that's the problem, is that's what happened with Morgan WIC. You don't want potentially one-sided information or one objected into the process at that time. You want it instead to be looked at on its merits. Does the petition, you know, meet, yes, certainly certain requirements like having cited proper scientific material, having identified the species, gone through and analyzed the criteria. But if the petition does all of that, Congress wanted it to be passed on to a much broader, more open review period that where you would have some objecting to it, others supporting it, and those views could be balanced out using the best available science that's available. Morgan WIC itself is a great example of how this went awry. You had 12 individual submissions by the state of Wyoming, all that were designed to downplay the at the universities within that state and other states saying, that data has never been vetted. We need to look at it before you make decisions on it. And so that's the concern here. And I don't mean to put the states in a position of saying, you know, they're always opposing things. But Congress, again, I mean, by setting up a process that realizes that they may have heavy objections to having federally designated species, acknowledges that that does happen. So in answer to Judge Watford's question, the way he framed it, that there is no specific provision that prohibits the agency from, one of the services, from considering information outside of the petition. At the 90-day review stage, the answer is yes. Congress prohibited them from looking at material that is submitted from outside the agency. Which statute says that? Well, if you look at Morgan WIC, it focuses on 16 USC 1533. Hold on, hold on. 16... USC 1533, B2, A, and B. Looking at that process, how it works, a 90-day review. So you're construing a couple of statutes to reach that conclusion? Well, I don't think the government disputes that conclusion. I think that that's... Well, let me ask you this. Let me ask you this. So, and I don't mean to be silly or anything, but, you know, an official at one of the services gets a petition, reads it over, may be familiar with the species at hand, or whatever it might be. And in his own, in his or her own workup of the petition and review of it, you know, goes on to the internet and gathers information. Why even go to the state's agency website and gathers information? Can they do, can they consider that information in ruling on the petition? Well, I don't think so. I think they could use the internet, I think, to verify material in the petition to determine what, you know, what its sources are. But if you look at, there's one of the six Morgan Wick cases. It's the Western Watersheds case out of Idaho. There it wasn't really sort of a... The type of solicitation that occurred in Morgan Wick was literally like calling up the state of Wyoming. In that case, it was just a staff member sort of like innocently on a bulletin board typing in, hey, we got this petition, and the result of the information. And the district court there said, no, that's, you should never have even done that. Right? If you want to do that, be fair. Move to a status review. Is there a standard for evaluating the petition? Just analogizing, and it's not a good one, but when a district court gets a complaint, there's maybe a motion to dismiss it for failure to state a claim. Yes. Is there anything like that that applies to the way in which a staffer would evaluate the content of a petition? Yes, there is. There's actually a set of regulations interpreting section 1533B2A, and I'm sure they're in our brief. I'm happy to provide them if you need them. But they basically say a couple things, and the Ninth Circuit has said this in analyzing 90-day findings as well. It's a very low threshold. The standard is essentially that a reasonable person looking at the four corners of the petition and deeming them to be accurate and true. And of course, a lot of these petitions are put together by professional organizations that have scientific capabilities to do so, as this petition was. So deeming them to be true, would a reasonable person conclude that the petitioned action may be warranted? If the answer is yes, then let's initiate a status review in which we could invite all parties who might have conflicting information. Now, in addition to that, of course, someone sitting at Fish and Wildlife Service can look at the studies, and based upon their own experience, say, you know, we don't believe these studies are credible, or these studies are the most up-to-date or most recent. And they may look at it that way using their own expertise, but the courts have also made it clear that they better be able to justify that if that's what they're denying the petition on. They need to point to why it's not credible, why it's unreliable, or why the information has been rejected. But going back to this question of what they're looking at, it's the four corners, it's a reasonable person test, it's whether the information is accurate and credible. We assume it is, unless there's reason to believe otherwise. Then let's grant the 90-day, and let's move this on so people can actually evaluate its merits. Can the services, upon receiving a petition, can they go to their own files and look at what they have in their own records? Can they include a recent report from a state on the status of state conservation efforts? Yeah, well, so there's certainly nothing prohibiting them from applying their own knowledge, and there are reasons beyond the petition that they may be looking at this. Maybe they were considering their own listing issues. The answer is yes. But I will say this, I mean, I've been doing this for a long time now, and I don't think I've ever come across a situation in which something in the agency's own files were a surprise or were injected as a point of objection to the petition. That's a lot different than asking for that information and then putting it in the mind of a state or another requester, hey, I better come up with something here that's going to throw this thing off track. Can I ask one last question? I know you're over time, but let's say that you're right, that the agencies really can't take into account material that the state sends them close in time to the filing of your petition. Is that something that could be policed on the back end? In other words, once you got the 90-day negative determination, wouldn't you be able to, I guess at that point, challenge the agency if it had relied improperly, as you say, on material that had been submitted by the state? Couldn't you then just challenge that at that point and get that 90-day determination invalidated? Well, that's what we did in Morganwick, right? But here we have an opportunity to say, why are we even doing it in the first place? Yes, I mean, the answer is just like in Morganwick and the other six cases, they could only justify, the agency could only justify their denial of the petition based upon this outside information, and we called them on it, and we won. But here, we are injured. I mean, our petition's been denied. It won't even be heard. It's because of this solicitation rule that's caused this because we are being compelled to do their agency's bidding here. So we feel the injury's sufficient here for this rule to be evaluated. The district court suggested this too by saying she was going to separate the question of notice from any potential misuse of information. But why should we have to comply with a rule that's, in our view, illegal, only to have a different nature of an injury later on down the road? It could take a year or more for that to happen. Here, we have been denied access to the agency based upon this solicitation rule. Okay, let's hear from the government. Thank you. May it please the court, Robert Ludman, representing the Fish and Wildlife Service. I just want to start with the rule. If you look at 50 CFR 424.14, there's no solicitation requirement. It's just notice. All friends have to do is, 30 days before filing, send an email or a letter to the interested states saying that they're going to file a petition. They don't need to submit additional information. They don't need to send a copy of the petition. It's just notice. So it's not solicitation. And if you look in the preamble to the rule, the proposed rule required coordination with the state. And Fish and Wildlife Service, the National Marine Fishery Service, decided not to require that. And they backed off and implemented only this notice requirement. So it's a lot more modest burden than Mr. Harris is indicating. But counsel, weren't there statements that were made in the Federal Register and answered to questions that the pre-filed notice will encourage states to send information to the services that they can then evaluate as part of the 90-day determination? Wasn't that part of the rationale? So, as to the rationale, yes. That is part of the rationale. But there's a simpler rationale as well, which is just the courtesy notice idea that states who have a role to play in the process will know that this is coming down the road. That sounds like it's more than procedural, though. That sounds like it's more than procedural if you're encouraging states to provide information at an early stage. Well, I don't think there's encouraging. It's noting that it's a possibility and that states with or without this role may send information to the services that relate to a species. The district court considered this argument as well and on ER page 9 said, you know, this isn't presented here, that the service is considering too much. The services here denial is simply because of the 30-day rule and Friends of Animals can resubmit. The denial explains that it's not like denial of prejudice, that they can send notice to the states and resubmit and then be off and running. If and when the service does what Mr. Harris is complaining about happened in Morganweck, solicitation and or consideration of material that's submitted by a state that they think shouldn't be considered, they can challenge the 90-day determination. Let's say here they had provided the notice. At the end of the 90 days, the we don't think this is warranted. We don't think there's substantial information supporting this. At that point, and in addition then, citing the information provided by Montana or Wyoming, at that point they can say, no, you can't do that and cite the Morganweck cases and we'd have a completely different case on a different record. But here we have a modest requirement and that's what the services have cited to in denying  Is it right that the services cannot take into account this information that's been received from the states to make the 90-day determination? Well, I think the service's position in the rule is we are not soliciting. We are following the Morganweck case and not doing that. The service also explains, though, of course we don't have to decide these things in a vacuum. We have a very short window but in that window we can look to context. And that context may include material we already have or material that comes in the door during that period. Now, when that crosses the line and is no longer really a 90-day review and more looks like the one-year review, that's the problem the court was getting out of Morganweck and those cases, which is where the service was saying, you know, we're not going to just go with the petition and what we have. We're going to send specific solicitations to multiple states. And then those processes took years. In Morganweck, it was, I think, two and a half years. In the Colorado River Cutthroat Trout case, it was four plus years. And that's just not what we have here. We don't have a multi-year review that should be taking place in 90 days. Instead, we have a threshold denial and simply the question about whether notice is okay or not. But let's assume that we agreed with the plaintiff on this point. That the services in making the 90-day determination have no business looking outside the four corners of the petition and maybe, you know, just general background information. But they're not permitted at the 90-day stage to take into account anything that's received from the states. If we agreed with that position, I guess I don't see how we could rule for you, for the government here. I still think, you know, this rule, you know, that one of the justifications is it will lead to a more efficient and sensible process. But unless and until the agency actually relies on that information or even receives it, I don't think the issue is presented by this case. And the district court here is clear that, you know, if you have this problem with the service, that's a different case and I might be receptive to that argument. But there's no business. You have no business. The agencies have no business requiring them to jump through this pre-filing hoop. If all it's going to generate is something that you can't look at in the first place, it seems to me that's just the definition of an arbitrary and capricious pre-filing requirement, no? I don't think so. And that's not the only justification for the rule. The rule also explains that, look, states have a role to play in this. And it makes sense for us to let them know, to require the petitioner to let them know that this is going on so states can you know, they're probably not going to get anything done in 30 days. They may not get anything done in the 90-day period. But it starts the clock for them to know that, with respect to this case, oh, there's an issue with the prior mountain mustangs and we need to if we're interested in this issue, start thinking about it. And it's just good governance to give the states a nudge, especially when the statute says services, there's an express mandate and this is what's in 1535A, cooperate to the maximum extent practicable with the states. And so the services have been told in the statute to work with the states to the maximum extent practicable. So providing a simple notice requirement 30 days in advance is consistent with that statutory instruction. It is a benefit to the states and it could be a benefit to the services down the road. And it's not a big burden on a potential petitioner who doesn't have to send this notice as soon as they think they might file a petition. Mr. Lundman, if it's beneficial to give the states some advance notice so they can prepare, wouldn't it be beneficial also to give the public advance notice so the public who is interested can prepare? And I think the services specifically rejected giving the public notice in the rulemaking process here. Am I correct about that? The services decided not to provide or require any sort of other public notice. And I think the distinction here is the services cite to this 1535A provision, which encourages them to the maximum extent practicable to cooperate with the states in the process. And so that's why the states here are being treated differently than the public writ large. This is related to a separate argument that Mr. Harris made, which is well, the statute later says you have to provide notice to the states. But under Chevron Step 1, it's not enough to just point to a provision saying, well, there's later notice. There has to be something that's indicating that earlier notice is foreclosed. And we don't have any language in that provision indicating that this is the first time to provide notice to the states, or the only time, or before this time, don't provide that notice. So under Chevron Step 1, it's not enough just to presume that, well, because notice is later required, it can't be required earlier by the service and rule pursuant to authority it has to provide procedures for petitions. And that authority is also expressed, and it's in 1533H. I agree with you, counsel, on that point, on the Step 1 matter. So if the rationale for this rule had been, well, in our experience, once we get past the 90-day determination, when we give actual notice to the states at that point, that doesn't give them enough time to participate in the 12-month determination. I could understand the rationale. I could understand the rule if that were the rationale. But the rationale here is totally different. It's saying, I think, we want the states to give us information that we can use in the 90-day determination. And that's why I just come back to it at Step 2. If we disagree with that, and we think, no, actually, that is not permitted. Congress did not want the services to be reviewing that kind of information outside the four corners of the petition, then, again, I'm just thinking that at Step 2 we could not say this as reasonably, because it's making them do something that has no purpose other than to provide the services with information that they're not allowed to look at at that stage of the case. I think there's nothing in the actual text of the rule with that justification. So it's all preamble language. Why the service think the rule makes sense is a good governance idea. And if you look at the preamble 66-463, there's a long discussion of why they think they have the discretion to kind of consider context and why providing this notice may lead to additional information in some cases and maybe not in the bulk of the cases and that it doesn't make any sense for them to consider these petitions in a vacuum. And that's the service's own language. If there is a definitive piece of information out there that comes in during the 90-day review, the services should be able to think about it and say, well, okay, here's the standard. Is there substantial information or not that listing may be warranted? And the answer may be, yes, this is helpful information. We think listing is warranted. Or, no, this is helpful information and we don't think it is. And then they consume and challenge that 90-day determination. The preamble has an expansive explanation for why this makes sense. One small piece of that is this idea that, well, it's possible some states will submit information and won't consider it during this initial 90-day period. But that's not the whole justification for the rule. Even if you think that justification is wrong, we think the rule should still stand because the courtesy notice idea of letting the states kind of start thinking about something is supported by the express statutory mandate to cooperate with the states to the maximum extent practical. Let me ask you, at step two of Chevron, in this particular context, to what extent can we look at the explanation given for the rule in determining whether or not there's an inconsistency, it's arbitrary and capricious? Don't we look at the reasons given? Right, I think you do look at the reasons given. In Chevron step two you're assessing with deference to the service whether it's arbitrary and capricious or not, or is inconsistent with a part of the statute that's not expressed but is refined. It's pretty clear that they're trying to encourage information from the states. They say in this preamble, the final rule, that allowing the states to submit information and whatnot, that it's consistent because they're interpreting the act to provide for consideration of all information regardless of when it was received. Right, and that's the idea that it doesn't make sense for them to make a decision in a vacuum and that the quote from 66-463 is in these regulatory amendments the services have crafted a balanced approach that will ensure that they may evaluate the information readily available to us without conducting a more wide-ranging collection of information and analysis more appropriate for a 12-month status review. So if they have this in their files, or it shows up during the 90 days, they don't have to stick their head in the sand and pretend like it doesn't exist. And if Mr. Harris and Friends of Animals think that the 90-day determination is incorrect as a matter of law or arbitrary and capricious, that's the time to challenge the decision. To some extent, aren't they moving up the whole final stat, the one-year status review process? I don't think it's getting ahead of itself at all. There's two different standards, and the 90-day standard is, you know, is there substantial scientific or commercial information indicating that the petitioned action may be warranted? And there's no argument here that they misapplied that standard, that that's incorrectly applied, because they failed at the threshold level of the notice. And that question, well, is it warranted or not, and is there substantial information or not, is one that can examine directly the question of, well, did they go too far beyond the petition? But I don't think you can fault this rule, which doesn't solicit any information, just requires notice as causing that problem. That's a separate problem. A state could get notice in any number of ways and decide to submit information. And then the question is still, well, has the service correctly applied this standard at the 90-day finding time? And the problem in Morgan Weck and those other cases was the service was, well, they were jumping ahead. They were saying, well, we're going to move ahead and spend years analyzing this in depth, and we're going to ask for specific information from a variety of parties, and then we're going to put it all together. And at that point, they were making what functionally appeared to be a 12-month determination. So you call the rule a notice rule as they say it's notice, but the petitioner calls it a solicitation rule. If you look at the explanation given to the responses to the final rule, it's a little bit of both. It's notice and it certainly encourages the states to submit information, and they will indeed consider it. I think if you look first level at the text of 424.14, there's nothing inviting or soliciting anything. Look at the explanation, the preamble, as you were noting. The service is trying to say, look, we will not stick our head in the sand, and we don't think it benefits anyone to consider these in a vacuum. If we have relevant information, we're going to consider it. And sure, states may submit some information, but then the question is, well, did they mess up the 90-day finding or not? Well, that's a procedural mistake that a state decided, because it got notice, to submit information. The question is, well, what does the service do with it, if anything? And that's, as the district court said, a later case that I'm sure we'd have to defend. If Wyoming or Montana here submitted information that Mr. Harris disagreed with and that the service shouldn't rely on, that would be an issue we'd have to litigate at that point. That sounds like messy litigation at that point. Well, I don't know if it's any messier than this is. I think inferring from the preamble that we're really here trying to implement a rule that we're saying we're not implementing, and that's not required, all they do is provide notice, they don't have to solicit, and they don't have to compile, and the state's not required to submit, and the way to consider it, I think, is a misreading of the modest effect of this rule, which I think survives both Chevron steps one and two. My time is up. Unless the court has any further questions, we ask that you affirm. I don't hear any further questions, so thank you, counsel. We'll give you two minutes for revival. Okay, just three quick points, Your Honor. First, I think, as you pointed out, the preamble is pretty specific. I don't think there is any alternative purpose for this rule. First of all, for more than 40 years, they haven't seen the need of requiring petitioner to provide advance notice to the states. Second of all, Mr. Ledman asked as if this is a rush, like the gunshot, and they meet all these deadlines, and they don't. I mean, Morgan Wick itself shows how long just a 90-day finding case could be. Look, Congress set up a timeline that's rarely met by the agency, but Congress clearly didn't think that it wasn't capable of doing everything within that 12-month period, including soliciting information from the states. I'm not sure how this extra 30 days helps that out, whether it's at the 90-day finding or the 12-month finding. And as this courtesy notice, they hinge this all on Section 6. I mean, I gave you some provisions that I think pretty clearly talk about the role of the states in the listing process. Section 6 is the role of the states after the listing process is finished, right? All it does is say that the states and the federal government should cooperate in protecting endangered and threatened species. Those species are on the endangered and threatened lists, right? How to fund programs, recovery programs. So they've hung their hat over and over again on Section 6 and really never addressed any of the four provisions that I raised with respect to the role of the states in the listing process. I would also say, I just disagree with the Morgan WIC that that was blurring the two. That was a 90-day finding and they had only solicited very select information. Their judge figure called it cherry-picking. And finally, just going back to this, I didn't have a chance to say it much, but I would ask the Court to look to see if this rule is even within their rulemaking authority under Section 4H. Because 4H says that they could regulate the Section 4 process. Well, their briefs admit that this occurs before the Section 4 process. This is pre-notification. There's no authority there to require us to, private parties, to do something with their petition before they even submit it to Fish and Wildlife Service. Thank you, counsel. Thank you, both counsel. We appreciate your arguments this morning. And at this time, the case is submitted for decision. Thank you.
judges: Paez, Watford, Tunheim